FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

OCT 01 2012

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

| | |
|---|---|
| TERESA M. ARNETT, SHARLEEN PELZL, JAMES O. SMITH and RPOA TEXAS OUTREACH, INC., PLAINTIFFS, VS. FRANK DENTON, Chairman of Commissioners of the Texas Department of Licensing and Regulation, in his official capacity and the STATE OF TEXAS, DEFENDANTS. | § § § § § § § § § § § § § |

A12CV0913 LY

CIVIL ACTION NO. _____

### PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF AND REQUEST FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Daniel Beard and RPOA Texas Outreach, Inc. and files this Original Complaint for Declaratory Relief and show this Court as follows:

#### Parties

1. Plaintiff Teresa M. Arnett (hereinafter "Arnett") is an individual residing in Rosanky, Texas.

2. Plaintiff Sharleen Pelzl (hereinafter "Pelzl") is an individual residing in Dripping Springs, Texas.

3. Plaintiff James O. Smith (hereinafter "Smith") is an individual residing in Georgetown, Texas.

4. Plaintiff RPOA Texas Outreach, Inc. (hereinafter "RPOA") is a domestic non-profit corporation whose principal business is within the state of Texas.

5. Defendant Frank Denton is the Chairman of Commissioners of the Texas Department of Licensing and Regulation. Defendant Denton is being sued in his official capacity only. Defendant Denton can be served with process at his office located at 920 Colorado, Austin, Texas 78701.

6.    Defendant State of Texas may be served with process through the Secretary of State, Hope Andrade, who can be served with process at her office located at James E. Rudder Building, 1019 Brazos, Room 220, Austin, Texas 78701.

## Jurisdiction and Venue

7.    Plaintiffs bring this cause of action under the U.S. Constitution, Texas Constitution and 42 U.S.C. § 1983 to challenge the constitutionality of Chapter 802 of the Texas Occupations Code.

8.    Pursuant to 28 U.S.C. § 1331, 2201 and 2202, this Court has subject-matter jurisdiction over this action.  This Court has personal jurisdiction over the defendants given their status as an official of the state of Texas and the State itself.

9.    Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b).

## Agency and Respondeat Superior

10.    Whenever in this petition it is alleged that the Defendants did any act or thing, it is meant that Defendants themselves or their agents, officers, servants, employees or representatives did such act or thing.  It was also done with full authorization or ratification of Defendants or done in the normal routine, course and scope of the agency or employment of Defendants or their agents, officers, servants, employees or representatives.

## Facts

11.    In 1992, a group of dedicated and conscientious individuals formed RPOA in response to a need for an organization to analyze animal related problems and develop programs to prevent or solve them instead of only accepting the growing number of unwanted animals filling Texas shelters.  Originally organized as an all volunteer operation, the project grew over the years due to increased demands for its services.  The purpose of RPOA is to make a lasting contribution to the quality of life for animals and people.  The membership of RPOA is comprised of concerned pet owners, pet clubs, pet fanciers, veterinarians,

veterinary technicians, pet groomers, boarding kennels, pet sitters, rescuers, breeders, dog behaviorists and trainers and many others in the pet industry.

12.     One of the many pieces of legislation to emerge from the 2011 Texas Legislative session was House Bill 1451.  HB 1451 concerned the creation and enforcement of a regulatory scheme on the breeders of certain dogs and cats within the State of Texas.  RPOA along with a number of individuals and entities lobbied against HB 1451 and pointed out to numerous legislators not only the problems that the legislation would create for the breeding industry but also the unconstitutional elements of the proposed legislation.  Despite their efforts, HB 1451 was passed by the Texas House and Senate and signed by Governor Perry.  HB 1451 is codified as Chapter 802 of the Texas Occupations Code and is set to take effect on September 1, 2012.  The title given to the act is "The Dog or Cat Breeders Act" (hereinafter "the Act").

13.     As part of the Act, the Texas legislature charged the Texas Department of Licensing and Regulation (hereinafter "TDLR") with the task of promulgating the specific regulatory scheme and the rules that define and support such scheme.  Pursuant to its own rules, TDLR began the rule making process.   Again RPOA, along with a number of individuals and entities, lobbied TDLR and this commission in an effort to create a system of regulations that would satisfy both the stated goals of the Act and result in fair treatment for breeders of dogs and cats.  RPOA made numerous attempts to demonstrate how certain proposed rules would be devastating to the breeding industry and other rules would outright violate the rights and protections set forth in both the United States Constitution and the Texas Constitution.

14.     In March of 2012, TDLR passed a regulatory scheme and rules supporting said scheme (hereinafter "the Rules").  The Rules are set forth in Title 16, Texas Administrative Code, Chapter 91. In spite of RPOA's best efforts, TDLR included many of the most harmful and constitutionally offensive rules.  The businesses of the Plaintiffs and most of the membership of RPOA will be affected and impacted by the implementation and enforcement of the Act and the Rules

15.     Section 802.003 of the Act reads that it does not apply to an animal regulated under the Texas Racing Act. And, 802.005 specifically exempt dogs bred with the intent to be primarily used for herding livestock, hunting (including tracking, chasing, pointing, flushing or retrieving game) or competing in field trials, hunting tests or other similar organized performance events. Nowhere in the Act is any reason written for a disparate treatment of breeders of different types of dogs or a disparate treatment of breeders of identical breeds of dogs with different intended uses.

16.     Moreover, several sections of the Act are vague and open to multiple interpretations. In Section 802.004, the Act reads that "*each adult intact female possessed by a person engaged in the business of breeding animals for direct or indirect sale ... is presumed to be used for breeding purposes unless the person establishes to the satisfaction of the department based on the person's breeding records or other evidence reasonably acceptable to the department, that the animal is not used for breeding.*" The Act sets no standards for overcoming this presumption and simply leaves it in the hands of the department to make its own judgment.

17.     The exemption in Section 802.005 of the Act applies to dogs bred with the intent that it be primarily used for the listed activities. This section does not specify whether it is the intent of the breeder or the end purchaser of the dog that controls the analysis. Moreover, Section 802.005 also uses the terms "*other agricultural uses*" and "*similar organized performance events*" to define classes of dogs to which the exemption applies. Nothing in the Act defines these terms or provides any explanation as to the limitation which may apply to the exemption.

18.     Section 802.062 of the Act concerns inspections of the facility of a breeder. Nowhere in this section is there a reference to a warrant requirement for the inspectors to enter the breeder's facility. In fact, section (c) authorizes an inspector to provide no advance notice to a breeder of an inspection if the inspector determines it inappropriate to provide such advance notice. This section fails to provide any parameters or guidelines for the inspector's determination which appears to be limitless. More troubling, though, section (d) provides that an inspector may enter the private residence of a breeder if it is necessary to access the animals or other property relevant to the care of the animals. This section again makes no requirement that a warrant be obtained if the

breeder refuses to allow entry to an inspector into his personal residence.

19.     While the Rules promulgated by TDLR contain many of the same problems as the Act itself, the Rules also added additional constitutional problems.

20.     In Section 91.23 and 91.24 of the Rules, the eligibility to obtain a Dog or Cat Breeders license requires, in part, the successful completion of a criminal background check.  Unfortunately, the Rules do not specify what constitutes successful completion.  Nothing in the Rules provides an applicant with any idea of whether the applicant can have no criminal history, only class C misdemeanors, successfully completed deferred adjudication, etc. and still pass this check.

21.     Section 91.27 of the Rules controls the denial of an application for a license.  But, nothing in this section or anywhere else in the Rules provides for the opportunity to appeal this denial.

22.     Plaintiff Arnett operates a dog breeding enterprise out of Rosanky, Texas breeding Boston Terriers.  Plaintiff Pelzl operates a cat breeding enterprise out of Dripping Springs, Texas.  Plaintiff Smith operates a cat breeding enterprise out of Georgetown, Texas.  Each of these breeders is subject to the Act and the Rules.

### Request for Declaratory Judgment

23.     Plaintiffs incorporate paragraphs 11 – 22 as if set forth at length.  Plaintiffs contend that several sections of the Act as well as several sections in the Rules violate constitutional protections.

#### Equal Protection

24.     Plaintiffs contend that Sections 802.003 and 802.005 of the Act violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that breeders of dogs and cats intended to be used for certain purposes are treated differently than other breeders of dogs and cats without a rational basis for such a distinction.  Plaintiffs request that this Court declare that, due to these violations of Plaintiffs' rights, Sections 802.003 and 802.005 of the Act is unconstitutional.

*Unconstitutionally Vague*

25.     Plaintiffs contend that Sections 802.004 and 802.005 of the Act and Rule numbers 91.23 and 91.24 are unconstitutionally vague, thus depriving Plaintiffs and RPOA's membership the due process rights afforded to them under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the Constitution of the State of Texas.  Plaintiffs request that this Court declare that, due to these violations of Plaintiffs' rights, Sections 802.004 and 802.005 of the Act and Rule numbers 91.23 and 91.24 are unconstitutional.

*Unreasonable Search and Seizure*

26.     Plaintiffs request that this Court declare Section 802.062 of the Act violates the right of Plaintiffs and RPOA's membership to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Constitution of the State of Texas.  Plaintiffs request that this Court declare that, due to these violations of Plaintiffs' rights, Section 802.062 is unconstitutional.

*Substantive and Procedural Due Process*

27.     Plaintiffs contend that Rule number 91.27 is unconstitutional as it deprives Plaintiffs and RPOA's membership of their property rights without due process guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the Constitution of the State of Texas.  Plaintiffs request that this Court declare that, due to these violations of Plaintiffs' rights, Rule number 91.27 is unconstitutional.

**Invalidity of Entire Act**

28.     Plaintiffs contend that upon finding that the Act contains unconstitutional provisions, this Court should declare the entire Act as unconstitutional and invalid.  The Act contains no severability language that empowers the judiciary to look at the Act as a piecemeal set of laws as opposed to one legislative enactment.  Second, the provisions about which Plaintiffs complain are so central to the Act that the Texas Legislature would not have passed the Act without them.

### Attorney's Fees

29.     Plaintiffs are entitled to an award of reasonable attorney's fees and expenses pursuant to 42

U.S.C. § 1988.

### Request for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction

30.     Plaintiffs incorporate the allegations set forth in paragraphs 11-22 as if set forth herein verbatim.

31.     Plaintiffs request that this Court immediately issue an order temporarily restraining the Defendants

from enforcing and/or implementing the Act and the Rules.  Specifically, Plaintiffs request that this Court

issue an order barring the State of the Texas and the Texas Department of Licensing and Regulation from

issuing permits, conducting inspections, reviewing applications, accepting fees of any kind and/or taking

any action to enforce either the Act or the Rules.

32.     Failure to prevent Defendants from enforcing the Act or the Rules would leave Plaintiffs and

RPOA's members without an adequate remedy at law.  Should the Plaintiffs and RPOA's members be

forced to comply with the requirements of the Act and/or the Rules, many of RPOA's members will be

forced to close their operations as the cost of compliance will be too great to sustain their operations.

Additionally, RPOA's members will be required to provide certain information and accept a loss of

certain constitutional guarantees in order to comply.   A monetary award will not be able adequately

compensate Plaintiffs and RPOA's members for these losses.

33.     Further, by delaying implementation of the Act and the Rules, the Defendants will suffer

absolutely no harm.   Since Plaintiffs will likely prevail on the merits of this case, a delay in

implementation and enforcement simply prevents the Defendants from abridging the Plaintiffs' and

RPOA's members' constitutionally guaranteed rights.  On the other hand should Defendants prevail on the

merits, they could immediately begin the implementation and enforcement of the Act and Rules without

loss of any money or effectiveness of the legislation.

34.     Plaintiffs request that this Court, after notice and hearing, preliminarily enjoin the Defendants from the same actions as set forth in the Temporary Restraining Order pending the further order of this Court.

35.     Plaintiffs are prepared to deposit whatever bond this Court determines to be reasonable for this Temporary Restraining Order and Preliminary Injunction.

36.     Following the trial on the merits, Plaintiffs request that this Court permanently enjoin the Defendants from the same actions as set forth in the Temporary Restraining Order and the Preliminary Injunction.

<strong>Prayer</strong>

37.     WHEREFORE, Plaintiffs pray that, upon final determination of this cause of action, Plaintiffs receive judgment from Defendants for:

37.1    Declarations as pleaded;

37.2    a Temporary Restraining Order as pleaded;

37.3    a Preliminary Injunction as pleaded;

37.4    a Permanent Injunction as pleaded;

37.5    Attorney's fees as pleaded;

37.6    Costs of Court; and

37.7    All such other and further relief at law and in equity to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,


*WESTERBURG & THORNTON, P.C.*
6060 N. Central Expressway, Suite 690
Dallas, Texas 75206
Phone No.:      214.528.6040
Facsimile:      214.528.6170


By:

Steven Thornton
State Bar No. 00789678

**ATTORNEY FOR PLAINTIFFS**

Plaintiff's Original Petition for Declaratory Relief and Request for Temporary Restraining Order,
Preliminary Injunction and Permanent Injunction

Page 9